UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14-cr-00067-SEB-DML |
| | ) | |
| ANTJUAN DYSON, | ) | -06 |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Antjuan Dyson's emergency motion for compassionate release, dkt. 717, filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Mr. Dyson asks the Court to reduce his sentence of imprisonment to time served and place him on supervised release for the remainder of his unserved sentence with home confinement as a condition.[1] For the reasons explained below, Mr. Dyson's motion is **DENIED.**

### I.
#### BACKGROUND

On October 26, 2015, Mr. Dyson pled guilty to one count of conspiring to possess with intent to distribute and to distribute five kilograms or more of cocaine mixture and 280 grams or more of cocaine base. Dkts. 522, 524. The parties recommended a prison sentence of 168 months.

---

[1]Mr. Dyson actually asks the Court to "grant him Compassionate Release to Home Detention." *See, e.g.*, dkt. 734 at 12. The Court understands this as a request to reduce his sentence of imprisonment to time served and to place him on supervised release for the remainder of his unserved sentence with home confinement as a condition—a request that comports with the Court's ability to "reduce the term of imprisonment" under § 3582(c)(1)(A).

Dkt. 522 at 4. The Court sentenced Mr. Dyson to 168 months in prison on February 10, 2016. Dkts. 629, 680.

Mr. Dyson is now 41 years old, and he has served 78 months—slightly less than half his sentence. He is projected to be released late in December 2025. Dkt. 731-1.

Mr. Dyson is currently imprisoned at Federal Correctional Institution (FCI) Elkton in Ohio. On April 3, 2020, the Attorney General identified FCI Elkton as one of three Bureau of Prisons (BOP) facilities "experiencing significant levels of infection." Dkt. 717-2 at 1. At that time, the Attorney General ordered the Director of the BOP to "immediately review all inmates who have COVID-19 risk factors" at FCI Elkton to determine their suitability for transfer to home confinement. *Id.* at 2.

The United States reports that, as of June 3, 2020, 461 FCI Elkton inmates (about 20 percent) had tested positive for the COVID-19 virus. Dkt. 731 at 3. As of June 17, the U.S. Bureau of Prisons (BOP) showed 40 active cases among FCI Elkton inmates and seven active cases among staff. BOP, *COVID-19 Update*, avail. at https://www.bop.gov/coronavirus/ (last visited June 17, 2020).

The United States acknowledges that COVID-19 "is an extremely dangerous illness that has caused many deaths in the United States in a short period of time." Dkt. 731 at 3. The particular danger COVID-19 presents to FCI Elkton inmates has been thoroughly documented in litigation in the Northern District of Ohio. *See Wilson v. Williams* (*Wilson II*), __ F. 3d ___, 2020 WL 3056217 (6th Cir. June 9, 2020) (vacating preliminary injunction entered in *Wilson v. Williams* (*Wilson I*), ___ F. Supp. 3d ___, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020)). Numerous aspects of prison life—and, specifically, of life at FCI Elkton—amplify the virus's transmission. Judge Gibbons succinctly summarized the situation as follows:

> The infection and fatality rates at Elkton have borne out the serious risk of COVID-19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death.

*Wilson II*, 2020 WL 3056217, at *7.

## II.
### LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), the Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." However, the Court may do so only "if it finds that extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[2] courts have universally

---

[2] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[3] *Id.*, Application Note 1(D).

---

[3]The catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act to reflect the fact that

## III.

### DISCUSSION

Although the compassionate release analysis typically proceeds in three parts, only the first is necessary here. Mr. Dyson has not demonstrated that extraordinary and compelling reasons justify any modification to his sentence. Accordingly, the Court does not address the § 3553(a) factors or the question of danger to the community in this Order.

In his motion, Mr. Dyson asserts that he suffers from hypertension, or high blood pressure, and therefore faces a heightened risk of serious illness or death if he contracts COVID-19. Dkt. 717 at 13–14. However, Mr. Dyson has not supported his assertion with any documentation that he has been diagnosed with or treated for hypertension. The United States has observed that no such diagnosis or treatment is reflected in Mr. Dyson's BOP medical records. *See* dkt. 731 at 13; dkt. 731-2. Mr. Dyson's reply does not rebut the United States' contention—or mention hypertension at all, for that matter. Accordingly, the Court does not find that hypertension is an extraordinary or compelling reason for Mr. Dyson's release.

Removing hypertension from the equation, Mr. Dyson's argument for compassionate release is that *all* FCI Elkton inmates face a "real and extraordinary and compelling threat of death"

---

defendants can now file motions directly in district court. "Accordingly, a majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] ... does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'" *United States v. Rodriguez*, __ F.Supp.3d __, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019)) (collecting cases). Such courts conclude that they have the "discretion to assess whether [a defendant] presents 'extraordinary and compelling reasons' for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement." *Id.* at *6; *see also United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 n.5 (D. Conn. Apr. 8, 2020). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Mr. Dyson's motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason."

from COVID-19. Dkt. 734 at 9. On some level, this argument has appeal. Despite the implementation of protocols to control spread of the virus, at the height of the outbreak at FCI Elkton, inmates faced a serious risk of catching a serious, potentially deadly disease. Indeed, the Sixth Circuit recognized this acute risk in *Wilson II*. *See* 2020 WL 3056217 at *7 ("The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing . . . and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death.").

However, to date, the Court has not found that incarceration in a COVID-19 "hotspot" is enough, standing on its own, to constitute an extraordinary and compelling reason warranting immediate release from imprisonment. Instead, the Court has looked to the totality of the circumstances and has denied motions for compassionate release from defendants who are not at serious risk from experiencing severed COVID-19 symptoms—even when they are incarcerated in a hotspot. *See, e.g.*, *United States v. Douglas*, No. 3:14-cr-00003-RLY-CMM-03, dkt. 407 (S.D. Ind. June 15, 2020) (finding no extraordinary and compelling reason for sentence reduction for defendant who was incarcerated at FCI Elkton and had tested positive for COVID-19 but had not displayed any symptoms and did not have conditions that put him at a higher risk of a severe or deadly case of COVID-19); *United States v. Swain*, No.  2:15-cr-00019-JMS-CMM-06, dkt. 781 (S.D. Ind. June 3, 2020) (finding no extraordinary and compelling reasons for sentence reduction for inmate who was incarcerated at facility experiencing a major outbreak of COVID-19 and had tested positive for COVID-19 but had not displayed severe symptoms and did not have conditions that put him at a higher risk of a severe case of COVID-19).

Notably, if the Court accepted Mr. Dyson's argument, it would afford greater and more broadly available relief than the preliminary injunction the Sixth Circuit vacated in *Wilson II*. In *Wilson I*, Judge Gwin certified a subclass of FCI Elkton inmates who (a) were 65 years or older, or (b) had "documented, pre-existing medical conditions" that would enhance their risk of experiencing serious illness or death if they acquired COVID-19. 2020 WL 1940882 at *6. Judge Gwin did not order that all members of the subclass be released to home confinement, as Mr. Dyson requests. Rather, he directed that the prison staff evaluate each subclass member's eligibility for compassionate release, parole, community supervision, or furlough, and transfer all other subclass members to other BOP facilities. *Id.* at *10–11. Detailing the BOP's efforts to mitigate the virus, the Sixth Circuit found that the subclass members were unlikely to demonstrate that the prison staff was deliberately indifferent to their serious medical needs—medical needs made more serious by advanced age and pre-existing conditions. *Wilson II*, 2020 WL 3056217.

Mr. Dyson requests greater relief than the *Wilson* subclass and on grounds that would apply to every inmate in the prison, not just medically vulnerable inmates. He has not identified an extraordinary or compelling reason for this Court to modify his sentence.

## IV.
### CONCLUSION

For the reasons stated above, Mr. Dyson's emergency motion for compassionate release, dkt. [717], is **denied**.

**IT IS SO ORDERED.**

Date: _____6/22/2020_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov

Richard A. Jones
LAW OFFICE OF RICHARD A. JONES, M.B.A., J.D. LLC
rajoneslaw08@aol.com